# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:16-cv-576-FDW

| | |
|---|---|
| WILLIE T. BOBBITT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| FNU SCOTT, et al., ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, (Doc. No. 1). Plaintiff is proceeding *in forma pauperis*. See (Doc. No. 4).

**I.     BACKGROUND**

*Pro se* Plaintiff Willie T. Bobbitt has filed a civil rights suit pursuant to 42 U.S.C. § 1983 with regards to incidents that allegedly occurred at the Lanesboro Correctional Institution. He names the following as Defendants: Correctional Officers Scott and Gaddy, Captain Mimms, Program Director Georgia Hall-Martin, and the Mental Health Department.

Construing the Compliant liberally and accepting the allegations as true, Plaintiff has a long history of mental health problems. He was in a cell on suicide watch in Lanesboro C.I.'s main medical unit on March 16, 2016, and he was released from suicide watch the following day. Defendant Scott came to Plaintiff's cell asking him to stop knocking on the door. Plaintiff repeatedly stated that he was no longer on suicide watch and needed clothes and was ready to go back to his cell. Scott assaulted Plaintiff by saying "don't make me come in there." (Doc. No. 1 at 3).

A short time later, around 11:00 or 11:30 AM, Defendant Scott opened the food trap and

1

sprayed Plaintiff and Plaintiff's cell with MK-9 pepper spray. (Doc. No. 1 at 4). Scott then told Gaddy to open Plaintiff's cell and he entered, which caused Plaintiff to fear for his safety. Scott continued to spray the entire can of MK-9 on Plaintiff as well as his personal mace, then punched Plaintiff's left eye twice. Plaintiff tried to cover himself with the suicide smock as Scott sprayed him. Plaintiff was never aggressive toward Scott or himself and did nothing to provoke the type of force that Scott used. During the assault Scott was yelling "I should kill you." (Doc. No. 1 at 4). Defendant Gaddy watched the assault and did nothing to stop it. Plaintiff received a red swollen left eye, loss of vision and bruises.

After the assault, Plaintiff was removed from main medical and was taken to see Nurse Wilkerson. Plaintiff received no medical treatment and was sent to his cell. Plaintiff did not receive treatment for his exposure to mace until 3:00 PM when two other correctional officers took him for treatment. Plaintiff was in a great deal of pain and discomfort from the MK-9 and mace. As a result of the incident, Plaintiff fears for his life, has problems sleeping, and experiences stress, depression and anxiety. Plaintiff sent numerous mental health requests yet received no help.

Plaintiff told Defendant Gaddy that he was going to write to his mother and newspapers about being assaulted, and Gaddy said she would report it to Mims. Mims retaliated by rejecting Plaintiff's outgoing mail that was sealed for no justifiable reason, which caused Plaintiff to become depressed and stressed. Hill-Martin retaliated by rejecting Plaintiff's grievance "based on her lie." (Doc. No. 1 at 3). Plaintiff fears for his well-being and is under a lot of unnecessary stress.

Hill-Martin retaliated by rejecting Plaintiff's grievance which was unjustifiable and intentional. Plaintiff worries that other papers of his that Hill-Martin comes across might not get processed (Doc. No. 1 at 6). Hill-Martin should show the reasons she rejected his grievances. It was later determined by Amanda Henry, the Administrative Secretary Grievance Coordinator that

2

"plaintiff had no grievance pending to stop him from submitting one." (Doc. No. 1 at 6).

Mims retaliated by rejecting Plaintiff's outgoing mail. He had never rejected Plaintiff's outgoing mail until Gaddy told him that Plaintiff was going to write to his mother and newspapers about the assault. Plaintiff is not a threat to the prison and is not a Security Threat Group member so rejecting his sealed outgoing mail is unjustifiable and retaliatory. Plaintiff has serious family issues and he is not sure if his loved ones are getting his mail, this is causing him stress and worry.

Plaintiff seeks declaratory judgment, injunctive relief, compensatory and punitive damages, and such other relief to which he is entitled.

## II. STANDARD OF REVIEW

Because Plaintiff is a prisoner proceeding *in forma pauperis*, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). In its frivolity review, a court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). A complaint should not be dismissed for failure to state a claim "unless 'after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.'" Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999)).

A *pro se* complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972); see also Smith v. Smith, 589 F.3d 736, 738 (4th Cir. 2009) ("Liberal construction of the

pleadings is particularly appropriate where … there is a *pro se* complaint raising civil rights issues."). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990). A *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007); see Ashcroft v. Iqbal, 556 U.S. 662 (2009) (the Twombly plausibility standard applies to all federal civil complaints including those filed under § 1983). This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). He must articulate facts that, when accepted as true, demonstrate he has stated a claim entitling him to relief. Id.

## III. DISCUSSION

**(1) Excessive Force**

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," Helling v. McKinney, 509 U.S. 25, 31 (1993). In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. Hudson v. McMillian, 503 U.S. 1, 1 (1992).

A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, "sufficiently serious," Wilson v. Seiter, 501 U.S. 294, 298 (1991); see also Hudson, 503 U.S. at 5, and must result in the denial of "the minimal civilized measure of life's necessities," Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The second

4

requirement is that a prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297, 302-03; Hudson, 503 U.S. at 5, 8. "[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." Hudson, 503 U.S. 1, 4 (1992); see Wilkins v. Gaddy, 559 U.S. 34, 34 (2010). The "core judicial inquiry," is not whether a certain quantum of injury was sustained, but rather "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7. "When prison officials maliciously and sadistically use force to cause harm," the Court recognized, "contemporary standards of decency always are violated ... whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, 503 U.S. at 9, 13–14.

The Fourth Circuit addresses a failure to intervene claim as a theory of "bystander liability" wherein there is "an omission to act...coupled with a duty to act." Randall v. Prince George's Cnty., 302 F.3d 188, 202 (4th Cir. 2002). A "bystander officer" could be liable for his or her nonfeasance if he or she: "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." Id. at 204. However, if no excessive force is applied by the fellow officer, the officer witnessing the conduct "cannot be held liable under bystander liability for a failure to intervene." Howie v. Prince George's Cnty., 2009 WL 2426018 at *6 (D. Md. Aug. 5, 2009).

Plaintiff alleges that Defendant Scott sprayed him with pepper spray and mace and punched his face while Plaintiff presented no threat and was not resisting, and that Defendant Gaddy stood by while this occurred. These allegations sufficiently set forth a claim of excessive force against

5

**Scott** and of failure to intervene against **Gaddy**, and shall proceed.

**(2)     Deliberate Indifference to a Serious Medical Need**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 104 (1976) (citation and internal quotation marks omitted); see Hill v. Crum, 727 F.3d 312, 317 (4th Cir. 2013) ("the Eighth Amendment's prohibition against 'cruel and unusual punishments' [extends] to the treatment of prisoners by prison officials," and "forbids the unnecessary and wanton infliction of pain.") (internal quotation marks omitted).

The deliberate indifference standard has two components. A plaintiff must show that he had serious medical needs, which is an objective inquiry, and that the defendant acted with deliberate indifference to those needs, which is a subjective inquiry. See Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008); see Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999) ("to establish a claim of deliberate indifference to medical need, the need must be both apparent and serious, and the denial of attention must be both deliberate and without legitimate penological objective."). A "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko, 535 F.3d at 241 (internal quotation marks omitted). To be found liable under the Eighth Amendment, a prison official must know of and consciously or intentionally disregard "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994); Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998). A mere delay or interference with treatment can be sufficient to constitute a violation of the Eighth Amendment. Smith, 589 F.3d at 739. However, allegations that might be sufficient to support negligence and medical malpractice claims do not,

without more, rise to the level of a cognizable § 1983 claim. Estelle, 429 U.S. at 106; Grayson, 195 F.3d at 695 ("Deliberate indifference is a very high standard—a showing of mere negligence will not meet it."); see Stokes v. Hurdle, 393 F. Supp. 757, 762 (D. Md. 1975), *aff'd*, 535 F.2d 1250 (4th Cir. 1976) ("even if a prison doctor is mistaken or negligent in his diagnosis or treatment, no constitutional issue is raised absent evidence of abuse, intentional mistreatment, or denial of medical attention.").

Liberally construing the Complaint, it appears that Plaintiff may be alleging that Nurse Wilkerson failed to provide medical care after Plaintiff was pepper-sprayed, and that the Lanesboro C.I. Mental Health Department failed to provide adequate care for Plaintiff's depression and anxiety following the incident with Scott and Gaddy.

The claim against Nurse Wilkerson cannot proceed at this time because Plaintiff has failed to name her as a Defendant. The Federal Rules of Civil Procedure provide that, "[i]n the complaint the title of the action shall include the names of all the parties." Fed. R. Civ. P. 10(a); see Myles v. United States, 416 F.3d 551 (7th Cir. 2005) ("to make someone a party the plaintiff must specify him in the caption and arrange for service of process."). Although *pro se* litigants are entitled to have their pleadings liberally construed, Haines, 404 U.S. at 520, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants," Pliler v. Ford, 542 U.S. 225 (2004).

Although the body of the Complaint contains allegations against Nurse Wilkerson, she is not named as a defendant in the caption as required by Rule 10(a). This failure renders Plaintiff's allegations against Nurse Wilkerson nullities. See, e.g., Londeree v. Crutchfield Corp., 68 F.Supp.2d 718 (W.D. Va. Sept. 29, 1999) (granting motion to dismiss for individuals who were not named as defendants in the compliant but who were served).

7

Plaintiff's claim against the Lanesboro C.I. "Mental Health Department" cannot proceed because that entity is not a "person" within the meaning of § 1983. See, e.g., Harden v. Green, 27 Fed. App. 173 (4th Cir. 2001) (prison medical department is not a "person" for purposes of § 1983). To state a facially sufficient claim, Plaintiff must make specific allegations against individual prison employees.[1] Coleman v. Peyton, 340 F.2d 603, 604 (4th Cir.1965) (*pro se* plaintiff should be given an opportunity to particularize a potentially viable claim).

Therefore, Plaintiff's deliberate indifference claim against the **Mental Health Department** is dismissed. However, Plaintiff is granted leave to file an Amended Complaint within 14 days of this Order that properly identifies all the individuals against whom he wishes to proceed, and explains how each of them violated his rights under the color of state law.[2] Plaintiff is cautioned that an Amended Complaint will supersede and replace the original Compliant, so it must include all defendants and claims upon which he wishes to proceed.

**(3) Retaliation**

Prison officials may not retaliate against an inmate for exercising a constitutional right. See Hudspeth v. Figgins, 584 F.2d 1345, 1347 (4th Cir.1978). To succeed on such a claim, a plaintiff must first allege that "the retaliatory act was taken in response to the exercise of a constitutionally protected right...." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Thereafter, a plaintiff must

---

[1] Plaintiff is notified that John Doe suits are permissible against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). "[I]f it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." Schiff, 691 F.2d at 197-98 (because it appeared that John Doe was an actual person, it was error for the district court to conclude that, under appropriate circumstances, this type of case would not be permitted).

[2] The Court expresses no opinion about the timeliness, procedural viability, or merit of an Amended Complaint.

demonstrate that he suffered some adverse impact or actual injury. See Am. Civil Lib. Union of Md., Inc. v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Board of Governors of Univ. of North Carolina, 902 F.2d 1134, 1140 (4th Cir. 1990)). In addition, a plaintiff must come forward with specific evidence "establish[ing] that but for the retaliatory motive the complained of incident[s] ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir.1995); accord Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir.1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring); McDonald v. Hall, 610 F.2d 16, 18–19 (1st Cir.1979). In the prison context, such claims are treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct." Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994).

Plaintiff alleges that Defendants Hill-Martin and Mims retaliated because he said he was going to report the assault to his mother and the newspaper. Hill-Martin rejected his grievance, which caused Plaintiff to worry that she might not process other papers of his, and Mims unjustifiably rejecting his sealed outgoing mail. Amanda Henry determined that "plaintiff had no grievance pending to stop him from submitting one." (Doc. No. 1 at 6).

Plaintiff has failed to state a claim against Defendant Hill-Martin because there is no constitutional right to a prison grievance. Adams, 40 F.3d at 75 ("the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."). Denial of his grievance, therefore, cannot constitute retaliation and Plaintiff's fear that Hill-Martin may fail to process his papers in future is too speculative to proceed.

To the extent that Plaintiff intended to allege retaliation against Amanda Henry, this claim

cannot proceed because there is no constitutional right to a grievance for the reasons above. Further, Plaintiff has failed to name her as a defendant or explain if and how she violated his rights. See Fed. R. Civ. P. 10(a); Dickson v. Microsoft Corp., 309 F.3d 193, 201-02 (4th Cir. 2002) (a pleader must allege facts, directly or indirectly, that support each element of the claim). Therefore, to the extent that Plaintiff attempted to make a claim against Henry, it is insufficient to proceed.

With regards to Mims, it appears that Plaintiff is claiming that the unjustifiable confiscation of outgoing mail violates the First Amendment. It is unclear at this juncture whether Plaintiff will be able to demonstrate an injury; he will be permitted to proceed at this time to further develop this claim.

Therefore, the retaliation claim against **Hill-Martin** is dismissed as facially insufficient but the claim against **Mims** shall proceed.

**(4)** **Injunctive Relief**

A prisoner's transfer moots a § 1983 request for declaratory and injunctive relief when the conditions of which the prisoner claims are unlikely to recur. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991); Taylor v. Rogers, 781 F.2d 1047, 1048 n.1 (4th Cir. 1986).

Plaintiff's claim for declaratory and injunctive relief are moot because he no longer resides at Lanesboro C.I. where the alleged incident occurred, and he has failed to allege the existence of any conditions indicating likely recurrence.

### IV. CONCLUSION

For the reasons stated herein, the claim of excessive force and failure to intervene shall proceed against Defendants Scott and Gaddy, the claim of retaliation shall proceed against Defendant Mims, and the remaining claims are dismissed. Plaintiff may file a superseding Amended Complaint within 14 days in which he may attempt to add parties and cure the

deficiencies identified in this Order.

**IT IS, THEREFORE, ORDERED** that:

1. The claims against Defendants Scott, Gaddy, and Mims, survive initial review under 28 U.S.C. § 1915.

2. The remaining claims are dismissed.

3. Plaintiff shall have 14 days in which to file a superseding Amended Complaint in accordance with this Order and all applicable rules and procedures. If Plaintiff fails to file an Amend Complaint within the time limit set by the Court, this action will proceed on the original Complaint, (Doc. No. 1).

4. The Clerk is directed to mail a copy of the Complaint, (Doc. No. 1), and a new Section 1983 complaint form to Plaintiff.

5. **IT IS FURTHER ORDERED THAT** the Clerk is directed to mail summons forms to Plaintiff for Plaintiff to fill out and return for service of process on Defendants **Scott, Gaddy,** and **Mims**. Once the Court receives the summons forms, the Clerk shall then direct the U.S. Marshal to effectuate service on Defendants. The Clerk is respectfully instructed to note on the docket when the form has been mailed to Plaintiff.

Signed: December 4, 2017

Frank D. Whitney
Chief United States District Judge